**SHADES RIDGE HOLDING COMPANY, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sam A. FIORELLA and Shades Ridge Holding Company, Inc., Defendants–Appellants.**

No. 88–7085.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1989.

As Amended on Denial of Rehearing Sept. 29, 1989.

Vowell, Meelheim & McKay, PC, Richard A. Meelheim, Samuel R. McCord, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Caryl Privett, Asst. U.S. Atty., Birmingham, Ala., Gary R. Allen, Chief, Appellate Sec., William Rose, Jr., Joan Oppenheimer, William Estabrook, Asst. Attys. Gen., Appellate Section, U.S. Dept. of Justice, Washington, D.C., for U.S.

Before RONEY, Chief Judge, COX, Circuit Judge, and MORGAN, Senior Circuit Judge.

RONEY, Chief Judge:

This appeal arises from two consolidated cases: a quiet title action commenced by Shades Ridge Holding Company, Inc. (Shades Ridge) and a foreclosure action by the Government to foreclose tax liens and judgment liens relating to the tax liability of Sam Fiorella against property titled to Shades Ridge. The district court entered a decree of foreclosure against three parcels of real property, holding that Shades Ridge was the alter ego and fraudulent transferee of Sam Fiorella. The total amount foreclosed was approximately $1,600,000, comprised of a consolidated judgment against Fiorella in *United States v. Fiorella*, Nos. CV–64–391 and CV–65–7745 (N.D. Ala.1968), totalling approximately $1,000,-000 for tax years 1956 through 1963, and a judgment entered in this case for approximately $590,000 for tax years 1969 through 1976.

Shades Ridge argues six points on appeal relating to the district court's failure to give proper effect to prior litigation, the insufficiency of the evidence to prove alter ego and fraudulent conveyance, and whether one of the prior judgments had been satisfied as a matter of law. This opinion will discuss the arguments seriatim, and detail facts as are necessary in the decision of each.

Briefly, the Government contends that since 1957, taxpayer has run a gambling operation offering his customers poker, sports betting, dice games, and blackjack. This gambling business has been so lucrative it has generated income resulting in taxpayer having more than $4 million in unpaid federal tax liabilities. Taxpayer and Shades Ridge have been litigating taxpayer's tax liability since 1964.

## I. *Res Judicata as to 1987 Tax Court Decisions*

Appellants argue that a 1977 district court judgment precluded by res judicata the reduction to judgment of income tax liabilities determined in 1987 tax court decisions. Although the district court, after an evidentiary hearing, ruled the prior litigation did not involve the same causes of action and therefore was not res judicata, it also ruled that taxpayer waived his right to raise the affirmative defense of res judicata in subsequent proceedings when he failed to raise it in tax court, when the assessments were determined. We affirm the district court on this legal waiver ground, and need not discuss the details of the complex litigation.

The rule governing the pleading of affirmative defenses in tax court, requires that

> A party shall set forth in his pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations. A mere denial in a responsive pleading will not be sufficient to raise any such issue.

Rule 39, 6 I.R.C. foll. § 7453.

The rule requires that affirmative defenses, such as res judicata must be raised initially in tax court. *Brutsche v. Commissioner*, 585 F.2d 436 (10th Cir.1978) (doctrine of election as affirmative defense). *See also* R. 34(b)(4) I.R.C. foll. § 7453 (tax court petition must contain clear and concise assignments of every error allegedly committed by the Commissioner in his deficiency determination).

Fiorella petitioned the tax court for a redetermination of the tax deficiency, challenged the deficiency in several respects, but did not assert then that the assessments were precluded by res judicata. Taxpayer argues that even though the defense should have been raised in tax court, it is not waived because it was raised in district court when the Government sought to reduce the assessment to judgment. The gist of taxpayer's argument is that a final judgment was not entered in the case until the district court entered judgment; res judicata was raised in the district court; thus, it was timely raised. Taxpayer cited no case either in his briefs or during oral argument in support of this proposition,

nor has this court found any cases to support this argument.

This same procedure was followed by a taxpayer and rejected in *United States v. Wynshaw*, 516 F.Supp. 785 (S.D.N.Y.1981), *aff'd on other grounds*, 697 F.2d 85 (2d Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 87, 78 L.Ed.2d 96 (1983). In *Wynshaw*, the Government sought to reduce to judgment income tax assessments against taxpayer. Taxpayer raised a defense in district court that she had not raised in the prior tax court proceeding. The court granted the Government's summary judgment motion, finding that taxpayer was "attempting to litigate an issue which is without doubt a matter that could have been offered to challenge the assessment in Tax Court." *Id.* at 789.

Taxpayer's rationale that the tax court decision is not a final judgment is equally without merit. A tax court decision is considered final upon the affirmance or dismissal after a notice of appeal or the expiration of that time. I.R.C. § 7481(a)(1).

Taxpayer may be attempting to assert that the district court has authority to hear taxpayer's defense in the first instance pursuant to I.R.C. section 7403, which provides that

> [t]he court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property....

I.R.C. § 7403(c). The cases holding that the taxpayer "may challenge the underlying merits of the assessment" in district court, however, do not involve prior Tax Court action, and are cases where the litigants' first opportunity to challenge the assessment in any court did not occur until the district court foreclosure action. *United States v. Lease*, 346 F.2d 696, 698 (2d Cir.1965); *United States v. Connor*, 291 F.2d 520, 527 (2d Cir.1961); *United States v. Mauro*, 243 F.Supp. 413 (S.D.N.Y.1965); *United States v. Camejo*, 666 F.Supp. 1542 (S.D.Fla.1987).

## II. *1982 Tax Court Decisions*

■ Taxpayer contends that the 1982 tax court decisions in *Shades Ridge v. Commissioner*, Nos. 7284–77 and 12290–78 (T.C. Nov. 8, 1982) are res judicata as to the Government's present attempt to collect Fiorella's tax liability from Shades Ridge's assets by an alter ego and fraudulent conveyance or use cause of action. Essentially, Fiorella argues that the cause of action the Government now asserts against Shades Ridge was asserted in the 1982 tax court cases against Shades Ridge. Taxpayer asserts that the Government was required to pursue its claims against Shades Ridge as Fiorella's transferee at the same time it brought an action to establish Shades Ridge's tax liability.

The district court in its Memorandum Opinion entered November 12, 1987, correctly held that the 1982 Tax Court judgments are not a bar to the nominee or transferee claim proceeding in this case against Shades Ridge. *Shades Ridge Holding Co. v. United States*, No. CV85–PT–2526–S (N.D.Ala. Nov. 12, 1987). It is not necessary to repeat that carefully reasoned opinion.

## III. *Nominee/Fraudulent Transferee Claims*

Fiorella contends that the Government failed to offer sufficient evidence to support the district court's decision that Shades Ridge was the alter ego/nominee of Fiorella.

■ The district court applied the correct principles of law. Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977). Although the district court found it unclear as to whether state or federal law governs this issue, the standards are so similar that the distinction is of little moment. *See United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686, 690 n. 5 (5th Cir.1985), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986). The issue under either state or federal law depends upon who has "active" or "substantial" control. *Valley Finance, Inc. v. United States*, 629 F.2d 162, 172

(D.C.Cir.1980), *cert. denied sub nom., Pacific Development, Inc. v. United States,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

■ Whether a corporation is a taxpayer's nominee turns on: (1) the control taxpayer exercises over the nominee and its assets; (2) the use of corporate funds to pay taxpayer's personal expenses; and (3) the family relationship, if any, between the taxpayer and the corporate officers. *Valley Finance, Inc. v. United States,* 629 F.2d at 171–72; *Loving Saviour Church v. United States,* 728 F.2d 1085, 1086 (8th Cir.1984).

■ Applying these factors to the instant case, the district court in its 42–page Findings of Fact and Conclusions of Law extensively outlined the history of the relationship between Fiorella and his family members with Shades Ridge. *Shades Ridge Holding Co. v. United States,* No. CV85–PT–2526–S (N.D.Ala. Dec. 17, 1987). The court found that Fiorella "was ever present and ever involved in the business decisions of Shades Ridge and moved his family members in and out of control at will" and that there "is no family member, other than Fiorella, who truly controlled Shades Ridge at any time." The district court's findings are not clearly erroneous.

The fact that there is no evidence that Fiorella owned stock in Shades Ridge does not affect the district court's ruling. The absence of stock ownership is not dispositive. *Krivo Industrial Supply Co. v. National Distillers & Chemical Corp.,* 483 F.2d 1098, 1104 (5th Cir.1973) (absence of stock ownership in corporation does not preclude application of the instrumentality rule "where action and total control has been otherwise established"). That no one testified that Fiorella controlled Shades Ridge is of no consequence in the view of the ample evidence

— that Shades Ridge's primary source of income was Fiorella's gambling earnings,

— that Shades Ridge's income and assets were used for the personal benefit of taxpayer and his family,

— that none of Fiorella's family members actually controlled Shades Ridge,

— that Fiorella was present at the office on a daily basis, participated in all decisions concerning Shades Ridge property, and attended all meetings regarding its corporate decisions,

— that Fiorella even assisted in company decisionmaking while he served time in prison for income tax evasion.

The record reflects substantial evidence to support the district court's decision.

### IV. Objection to Admission of Evidence Predating 1968

Fiorella contends that the district court erred in allowing the admission of evidence indicating alter ego or fraudulent conveyance prior to 1968, because a judgment entered against him that year disposed of claims based on the same theories involving transactions prior to 1968, so that it was res judicata as to any subsequent proceeding involving the same claims and the same tax years.

That was a final judgment entered pursuant to a compromise and settlement between the parties, in the amount of $1,004,-552.56, plus interest. *United States v. Fiorella,* No. 64–391 (N.D.Ala. Jan. 3, 1968). The court also ordered, among other things, that shares of stock of Shades Ridge be discharged from any federal tax liens, and that the actions be dismissed with prejudice as to Shades Ridge.

■ Since neither res judicata nor collateral estoppel can be used to exclude evidence used in a previous action, the district court properly considered Fiorella's argument based on the relevance or remoteness of the pre–1968 evidence. *Shades Ridge Holding Co. v. United States,* No. CV85–PT–2526–S (N.D.Ala. Nov. 12, 1987). Res judicata is not a doctrine limiting evidence, but a rule preventing a *claim* tried in one suit from being relitigated in a second suit. *See Thomas v. Commissioner,* 324 F.2d 798, 799 (5th Cir.1963). The doctrine of collateral estoppel does not bar the introduction of evidence.

■ *Thomas v. Commissioner,* 324 F.2d 798 (5th Cir.1963), cited by Fiorella, is dis-

tinguishable from the instant case. In *Thomas*, the issue was whether taxpayers were entitled to deduct losses they sustained during 1956–58 for the operation of a farm they contended was run as a for-profit business. This Court held that the tax court had to recognize the binding effect of a prior judgment based on a special jury verdict that expressly found that plaintiffs had operated the farm for profit in 1955. Here, the 1968 court made no express finding as to the alter ego/fraudulent conveyance theories nor is there any such finding implicit in the judgment entered pursuant to a compromise among the parties.

The government is probably correct in arguing that any error in admitting the evidence would be harmless, since the evidence of facts and events occurring after January 3, 1968 is sufficient to support the finding that Shades Ridge was taxpayer's alter ego.

### V. *Plea Bargain Agreement*

■ Fiorella argues that this action is barred by a plea agreement he entered with the Government in 1976. On December 17, 1975, a federal grand jury indicted Fiorella for conspiracy to evade the payment of federal taxes by concealing assets, and for federal income tax evasion for calendar tax years 1969 through 1972. On April 14, 1976, the United States and Fiorella entered into a plea bargain agreement with respect to these charges. Also on April 14, 1976, under the terms of the plea bargaining agreement, Fiorella was sentenced to one year and one day at the Federal Correctional Institution at Maxwell Field, Montgomery, Alabama and agreed to pay $200,000 in settlement of outstanding civil judgments.

Fiorella contends that, under the terms of the agreement, the Government agreed to absolve Shades Ridge from any liability for Fiorella's tax debts if Shades Ridge guaranteed the payment of the $200,000. Shades Ridge did guarantee payment in the form of a mortgage and a note. Fiorella satisfied his part of the plea bargain by serving the time in prison.

The district court in its Findings of Fact and Conclusions of Law entered November 18, 1986, correctly interpreted the agreement as contemplating separate settlements of Fiorella's criminal and Fiorella and Shades Ridge's civil liability. *Shades Ridge Holding Co. v. United States*, No. CV85–PT–2526–S (N.D.Ala. Nov. 18, 1986). The following language was in the agreement:

> It is further agreed and understood that acceptance of *this offer* by the United States completely absolves and releases the present assets of Shades Ridge Holding Company, Inc. from *any and all liability for taxes owed by Sam A. Fiorella up to the date of this agreement.*

The district court's finding that the Government rejected the offer as to the civil action shows that Shades Ridge was not absolved from liability by the agreement. Any ambiguity is resolved by the transcript of the sentencing hearing in which the court asked Fiorella's attorney, Mr. Bowen, whether refusal of the civil authorities to accept the settlement of the civil liabilities would in any way affect the agreement with respect to the criminal cases, and Bowen stated no, whether they accepted had no bearing on the validity of the proceedings.

Because this issue is decided on the factual basis of the agreement itself, it is not necessary to reach the question whether the Assistant United States Attorney had authority to compromise Fiorella's tax liability.

### VI. *Enforceability of January 1968 Judgment*

The last issue addressed by the parties concerns whether the district court erred in denying Fiorella's Motion for Relief From Judgment or in the Alternative to Alter or Amend the Judgment on the ground that the January 3, 1968 judgment was not enforceable after January 3, 1988, as a matter of state law. Another panel of this Court affirmed the district court's holding that it would be a violation of state law to revive the 1968 judgment beyond January

3, 1988. *United States v. Fiorella,* 869 F.2d 1425 (11th Cir.1989).

■ That prior panel did not reach the question of whether the tax lien underlying the January 3, 1968 judgment remains enforceable, as that issue was not properly before it. The district court did not err in denying Fiorella's motion. When an unpaid assessment is reduced to judgment, the tax lien is incorporated, but not merged, in the judgment. Since the tax lien survives the judgment, it can be enforced at any time. *See United States v. Overman,* 424 F.2d 1142, 1147 (9th Cir. 1970); *United States v. Hodes,* 355 F.2d 746 (2d Cir.1966), *cert. dismissed,* 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967).

AFFIRMED.